**GLACIER COUNTY SCHOOL DISTRICT NO. 50, EAST GLACIER PARK, MONTANA, Plaintiff,**

v.

**Myrna GALBREATH, Judge of the Blackfeet Tribal Court for the Blackfeet Reservation, Howard Doore, Judge of the Blackfeet Tribal Court for the Blackfeet Reservation; Don Sollars, Judge of the Blackfeet Tribal Court for the Blackfeet Reservation, and Members of the Blackfeet Tribal Business Council; Earl Old Person, Chairman, Bernard St. Goddard, Vice–Chairman, Roland Kennerly, Secretary, Elaine Guardipee, Treasurer, Marlene Bearwalter, Member, Ted Williamson, Member, Archie St. Goddard, Member, Jimmy St. Goddard, Member, Gabe Grant, Member, Carl Kipp, Member; and Tia Henriksen, Defendants.**

No. CV–97–061–GF.

United States District Court,
D. Montana,
Great Falls Division.

Dec. 8, 1997.

---

Jon Metropoulos, Gough, Shanahan, Johnson & Waterman, Helena, MT, Larry X Epstein, Office of the Glacier County Attorney, Cut Bank, MT, Catherine M. Swift, Gough, Shanahan, Johnson & Waterman, Helena, MT, for Glacier County School District No. 50, East Glacier Park, Montana, plaintiff.

Donald G. Kittson, Kathleen M. Fleury, Blackfeet Legal Department, Browning, MT, Jeanne S. Whiteing, Whiteing & Thompson, Boulder, CO, for Hon. Myrna Galbreath, Howard Doore, Don Sollars, Members of Blackfeet Tribal Business Council, Earl Old Person, Bernard St Goddard, Roland Kennerly, Elaine Guardipee, Marlene Bearwalter, Ted Williamson, Archie St Goddard, Jimmy St Goddard, Gabe Grant, and Carl Kipp, defendants.

Donald G. Kittson, Kathleen M. Fleury, Joe J. McKay, McKay Law Office, Browning, MT, Jeanne S. Whiteing, Whiteing & Thompson, Boulder, CO, for Tia Henriksen, defendant.

### MEMORANDUM AND ORDER

HATFIELD, Senior District Judge.

Plaintiff, Glacier County School District No. 50, East Glacier Park, Montana ("School District"), instituted the above-entitled action for declaratory and injunctive relief, challenging the authority of the Blackfeet Indian Tribe[1] to interfere with the School District's operations. The School District invokes the federal question jurisdiction of this court pursuant to 28 U.S.C. § 1331.[2] Presently before the

---

1. The named defendants in the present action include: Myrna Galbreath, Judge of the Blackfeet Tribal Court; Howard Doore, Blackfeet Tribal Court Judge; Don Sollars, Blackfeet Tribal Court Judge; as well as the various individual members of the Blackfeet Tribal Business Council.

2. The question of whether an Indian Tribe retains the authority to compel a non-Indian to submit to the jurisdiction of a tribal court presents a question of federal law, properly determined by the federal courts; the final arbiters of federal law. *National Farmers Union Ins. Co. v. Crow Tribe of Indians,* 471 U.S. 845, 852, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985).

court are (1) the School District's motion for a preliminary injunction, pursuant to Fed.R.Civ.P. 65; and (2) the defendants' motion requesting the court to dismiss the instant action based upon, *inter alia*, the School District's failure to exhaust Tribal Court remedies. Having reviewed the record herein, together with the parties' briefs in support of their respective positions, the court is prepared to rule.

### BACKGROUND

The School District, which is located in Glacier County, Montana, is a political subdivision of the State of Montana. The School District operates a public elementary school, *i.e.*, East Glacier Elementary School, which provides educational services to the students who reside within its boundaries, as provided in Article X of the Montana Constitution and Mont.Code Ann. § 20–6–101 (1997). The territory which comprises the School District lies within the exterior boundaries of the Blackfeet Indian Reservation, and is held in a mixture of private, trust, state and federal ownership. The property on which East Glacier Elementary School is located is owned in fee by the School District.

On October 3, 1996, the School District's Board of Trustees expelled Tia Henriksen, a twelve year old student at East Glacier Elementary School, for the remainder of the 1996–97 school year. The basis for the expulsion was Henriksen's assault of a fourth grade student, which occurred on September 24, 1996, on the school grounds.

Henriksen appealed her expulsion to the Glacier County Superintendent of Schools, pursuant to Section 10.6.101, *et seq.*, A.R.M., which provides the administrative process for pursuing contested cases. An administrative hearing was conducted on January 15, 1997, before Gary A. Baden, the acting Superintendent of Schools for Glacier County.

On April 11, 1997, the Superintendent issued his decision, holding the expulsion was improper, and ordered Tia Henriksen be readmitted. Specifically, the Superintendent held:

19. I do not condone Tia's conduct on the playground. I agree with the need to maintain safety on the school premises. However, I cannot overlook the School Board's violations of basic and fundamental precepts of fairness in order to affirm the expulsion and cessation of education to a twelve year old student. I conclude therefore, in light of the age of the student, the School's failure to previously address student conduct, the lack of supervision on school grounds and this, admittedly, being Tia's first offense in the 1996–1997 school year, that there is no rational relationship between Tia's offense and the discipline imposed (expulsion) that meets the constitutional due process and equal protection standards to which Tia is entitled.

On April 21, 1997, the School District notified Tia Henriksen's counsel that it intended to appeal the Superintendent's decision, and that Tia Henriksen would not be readmitted pending a final decision by the Montana Office of Public Instruction.

On April 23, 1997, Donald and Shirley Little Dog, as Guardians of Tia Henriksen, filed an action in the Blackfeet Tribal Court, seeking, *inter alia*, an order compelling the School District to readmit Henriksen pending the administrative proceedings. A show cause hearing was held on May 1, 1997, before Judge Myrna Galbreath of the Blackfeet Tribal Court. Judge Galbreath, after rejecting the School District's assertion that the Tribal Court lacked jurisdiction over the School District, expressed her opinion that Henriksen should be readmitted in accordance with the Superintendent's decision. Judge Galbreath then recessed the hearing and directed the parties to attempt to reach a compromise agreement.

During the recess, the parties reached an agreement regarding the terms and conditions upon which Henriksen would be readmitted to East Glacier Elementary School. As a result, no temporary restraining order or other injunctive relief

was issued by the Blackfeet Tribal Court. Tia Henriksen was subsequently reinstated in accordance with the parties' agreement, and has been attending East Glacier Elementary School.

On May 7, 1997, the School District instituted the above-entitled action, seeking declaratory and injunctive relief regarding the authority of the Blackfeet Tribe to interfere with the administration and operation of the School District.[3] In response, the defendants moved this court to dismiss the School District's complaint, pursuant to Fed.R.Civ.P. 12, based upon, *inter alia,* the School District's failure to exhaust Tribal Court remedies.[4] In addition, the defendants contend the School District's complaint is appropriately dismissed because the above-entitled matter was rendered moot when the 1996–1997 school year ended.

### DISCUSSION

As a preliminary matter, the court rejects defendants' argument that the present dispute was rendered moot by the expiration of the 1996–97 school year. In so holding, the court notes a case otherwise moot may still be heard if it presents an issue that is capable of repetition while evading review. *Public Utilities Commission of State of California v. F.E.R.C.,* 100 F.3d 1451, 1459 (9th Cir.1996). In order to fit this exception, a controversy must meet two requirements: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable

expectation that the same complaining party would be subjected to the same action again." *Id., citing, Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982).

The School District's claim for declaratory relief clearly satisfies the two elements of the above-mentioned exception. There exists a reasonable expectation, on the part of the School District, that the Blackfeet Tribal Court will, at some point in the future, compel the School District to appear before it, and respond to its directives. Accordingly, the court turns to address defendants' motion to dismiss predicated upon the School District's failure to exhaust tribal court remedies.

The School District asserts it should not be forced to exhaust tribal court remedies because the inherent sovereignty of the Blackfeet Tribe does not extend to the assertion of jurisdiction at issue herein. The School District maintains the Blackfeet Tribal Court's attempted exertion of jurisdiction over the administration and operation of the School District runs afoul of the United States Supreme Court's decisions in *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981) and *Strate v. A–1 Contractors,* 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997).

It is well established that "Indian tribes are unique aggregations possessing

---

3. Although no order was ultimately issued by the Blackfeet Tribal Court compelling Henriksen's readmittance, the School District asserts the Tribal Court's assertion of jurisdiction, together with the statements made by the Tribal Court Judge during the May 1, 1997, show cause hearing, lead it to believe it was subject to potential penalties for contempt should it fail to comply with the Tribal Court's directives. The fact that no written order was issued by the Blackfeet Tribal Court does not, the School District insists, obscure the fact the Tribal Court took jurisdiction over the underlying matter and compelled the School District to take actions it would not have otherwise taken with respect to Tia Henriksen.

4. The defendants also seek the dismissal of the School District's complaint upon two additional grounds. First, the defendants contend there is no "case or controversy" over which this court can assert jurisdiction, given the fact no order was ever issued by the Tribal Court. Second, defendants maintain they are immune from suit. The court is unpersuaded by the defendants' arguments in support of the above-mentioned alternate grounds for dismissal, and hereby DENIES the defendants' motion to dismiss, to the extent it is predicated upon the same.

attributes of sovereignty over both their members and their territory." *United States v. Mazurie*, 419 U.S. 544, 557, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975), *citing, Worcester v. Georgia*, 31 U.S. 515, 6 Pet. 515, 557, 8 L.Ed. 493 (1832). Distilling this principle in the context of civil jurisdiction, the Supreme Court, in *Montana v. United States, supra*, 450 U.S. at 565, 101 S.Ct. 1245, held the dependent status of Indian tribes necessarily divested them of power to regulate the conduct of non-members on fee land no longer owned by the tribe.[5]

> [E]xercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes, and so cannot survive without express congressional delegation. Since regulation of hunting and fishing by nonmembers of a tribe on lands no longer owned by the tribe bears no clear relationship to tribal self-government or internal relations, the general principles of retained inherent sovereignty did not authorize the Crow Tribe to adopt [such hunting and fishing regulations].

*Montana, supra*, 450 U.S. at 564–65 (citations omitted).

■ The *Montana* Court did set forth two exceptions to the general principle against tribal authority over non-members in the civil regulatory arena:

> A tribe may regulate through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct

of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

*Montana, supra*, 450 U.S. at 565–66, 101 S.Ct. 1245.

■ In the case *sub judice*, the dispositive issue is whether the nonmember conduct at issue, *i.e.*, the administration and operation of a School District, satisfies the second *Montana* exception. To invoke the second *Montana* exception, the conduct which the Tribe seeks to regulate must be "demonstrably serious and must imperil the political integrity, the economic security, or the health and welfare of the Tribe." *Wilson v. Marchington*, 127 F.3d 805 (9th Cir.1997), *quoting, Brendale v. Confederated Tribes and Bands of Yakima Indian Nation*, 492 U.S. 408, 431, 109 S.Ct. 2994, 106 L.Ed.2d 343 (1989).

Upon review, the court is constrained to conclude that, under the facts herein, the second *Montana* exception is not satisfied. In so holding, the court notes the State of Montana, through its administrative agencies and courts, is the authority responsible for safeguarding the inalienable right of children to a public education. Accordingly, the public interest lies in ensuring the responsible state agencies are free to apply their expertise in resolving the various issues associated with providing an education to the children of this State.

The process established under the law of the State of Montana for the operation and administration of a public school system is available to all students within that system. Once enrolled in the State of

---

5. In *Montana*, the Supreme Court held the Crow Indian Tribe lacked the proper authority to regulate hunting and fishing by nonmembers on nonmember fee lands. 450 U.S. at 556–58, 101 S.Ct. 1245. The Court identified tribal treaty rights and inherent tribal sovereignty as two sources of authority which could support a finding that a tribe had the power to regulate nonmember hunting and fishing on fee lands. *Id.* The Court initially determined that under the Fort Laramie Trea-

ty of 1865, the Crow Tribe possessed the power to exclude non-Indians from reservation lands, and, as a result, could regulate non-Indian use of said lands. *Id.* at 556–59, 101 S.Ct. 1245. However, the Court ultimately concluded the Crow Tribe lost the power to exclude, and with it the power to regulate, as a result of the passage of the General Allotment Act of 1887 and the Crow Allotment Act of 1920. *Id.* at 558–59, 101 S.Ct. 1245.

Montana's public school system, tribal members must comply with the procedures established by state law to resolve any resulting grievance or dispute. Opening the Tribal Court for the optional use of tribal members unhappy with the substance or pace of the proceedings mandated by Montana law is not, despite defendants' argument to the contrary, necessary to protect tribal self government. *See, Wilson v. Marchington,* 127 F.3d 805 (9th Cir.1997), *citing, Strate v. A–1 Contractors, supra,* 117 S.Ct. at 1416.

Having concluded that application of the *Montana* holding to the specific circumstances of this case precludes tribal court jurisdiction, the court is compelled to DENY the defendants' motion to dismiss. In so holding, the court notes the Supreme Court recently held *National Farmers* did not express "anything more than a prudential exhaustion rule in deference to the capacity of tribal courts 'to explain to the parties the precise basis for accepting [or rejecting] jurisdiction.' " *Strate, supra,* 117 S.Ct. at 1411,[6] *quoting, National Farmers Union Ins. Co. v. Crow Tribe of Indians, supra,* 471 U.S. at 857, 105 S.Ct. 2447.

> When, as in this case, it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by *Montana*'s main rule, it will be equally evident that tribal courts lack adjudicatory authority over disputes arising from such conduct. As in criminal proceedings, state or federal courts will be the only forums competent to adjudicate those disputes. (citation omitted). Therefore, when tribal-court jurisdiction over an action such as this one is challenged in federal court, the otherwise applicable exhaustion requirement,

... must give way, for it would serve no purpose other than delay.

*Strate, supra,* 117 S.Ct. at 1404, n. 14.

### CONCLUSION

Therefore, for the reasons set forth herein, the court concludes the defendants' motion to dismiss is hereby DENIED.

IT IS FURTHER ORDERED that the School District's request for declaratory relief is hereby GRANTED to the extent set forth herein.

IT IS SO ORDERED.

---

**6.** The controversy in *Strate* arose from a motor vehicle accident involving two non-tribal members on a North Dakota state highway within the Fort Berthold Indian Reservation. The Supreme Court ultimately held that, ab-

sent a treaty or statute, the tribal court lacked jurisdiction to adjudicate a dispute between non-members of the tribe arising out of an automobile accident on a state highway. *Strate,* 117 S.Ct. at 1407–08.